IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROSCOE CURTIS GATEWOOD, JR.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HAMIDIY, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Case No. CIV-22-583-PRW<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Before the Court is Plaintiff Roscoe Curtis Gatewood, Jr.'s ("Gatewood's") Motion for Entry of Default Judgment (Dkt. 10). Gatewood filed his Complaint (Dkt. 1) against Defendant Hamidiy, Inc. ("Hamidiy") on July 13, 2022, and service was effected July 20, 2022. Hamidiy filed no answer or other responsive pleading. On December 23, 2022, Gatewood moved the Court Clerk to enter default (Dkt. 7), which the Court Clerk did on January 12, 2023 (Dkt. 8). Because the Complaint did not allege a specific damage amount, the Court held a Motion Hearing on April 24, 2023, to confirm the Court's jurisdiction to render judgment and to determine the amount of damages owed (Dkt. 16).

### *Background*

This case arises out of the employment relationship between Gatewood, a truck driver, and Hamidiy, Inc., a trucking company. The relationship arose when Hamidiy reached out to Gatewood to see if he would be a good fit as a driver for the company. In the subsequent months that Gatewood drove for Hamidiy, his dedicated run always started

1

and ended in Oklahoma, his home state. On or about June 1, 2022, while Gatewood was in the middle of a delivery run, he called his Hamidiy supervisor to inquire about his paycheck, which was $3,000 short. Later that day, Gatewood was contacted by "Russ," to his knowledge the president of Hamidiy. On the call, Russ cursed, threatened Gatewood and his family with bodily harm and death, and repeatedly referred to Gatewood using a racial slur derogatory to African Americans (Gatewood is an African American). Russ then told Gatewood he was fired and ordered him to pull over and leave the truck immediately. A second call from Russ, and several follow-up text messages, proceeded along the same lines.

Gatewood then filed this lawsuit, alleging a violation of 42 U.S.C. § 1981, which, in relevant part, prohibits intentional race discrimination in the enforcement of contracts by private actors. Specifically, Gatewood alleged that Hamidiy violated § 1981 by terminating his employment contract in part because of his race. In addition, Gatewood brought a claim for unpaid wages under Oklahoma state law.[1] Hamidiy then defaulted as related above.

### *Legal Standard*

As already discussed, the Court Clerk has entered a default pursuant to Federal Rule of Civil Procedure 55(a).[2] That default "concedes the truth of the allegations of the

---

[1] *See* Okla. Stat. tit. 40, § 165.3
[2] Fed. R. Civ. P. 55(a).

Complaint regarding Defendant['s] liability under all counts brought against them."[3] However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."[4] In addition, the rule of concession "does not extend . . . to allegations about the amount of damages."[5] Instead, the Court must hold a damages hearing in accordance with Rule 55(b)(2)(B),[6] at which the plaintiff must introduce sufficient evidence to establish, "to a reasonable degree of certainty,"[7] "that the amount requested is reasonable under the circumstances."[8]

## Discussion

At the Motion Hearing on April 24, 2023, the Court heard testimony by Gatewood. That testimony served to aid the Court in assuring itself of personal and subject matter jurisdiction, determining the adequacy of Plaintiff's claims, and establishing the evidentiary support for the requested forms of damages. Each will be discussed in turn.

---

[3] *All. Laundry Sys. LLC v. Cowboy Laundry of Oklahoma Inc.*, No. CIV-20-136-PRW, 2020 WL 6136785, at *2 (W.D. Okla. June 23, 2020).

[4] *Id.* at *2 (quoting *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)).

[5] *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1154 (D. Kan. 2018).

[6] *See Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983).

[7] *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001); *see Ross*, 325 F. Supp. 3d at 1154.

[8] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274–75 (D. Kan. 2016).

**I. Personal Jurisdiction**

The Court has specific personal jurisdiction over Hamidiy. Courts assess two requirements to determine when an exercise of specific jurisdiction is proper.[9] First, whether the defendant has "purposefully directed [its] activities at residents of the forum."[10] Second, whether the suit "arises out of or relates to those activities."[11] Even when both requirements are satisfied, specific personal jurisdiction may still be improper if "it would be incompatible with traditional notions of fair play and substantial justice."[12]

Here, the allegations in the Complaint, now taken as true, make clear that Hamidiy purposefully directed its activities at residents of Oklahoma when it reached out to Gatewood to contract for an ongoing business relationship. The suit clearly arises out of Hamidiy's activities in Oklahoma, as both of Gatewood's claims stem from the employment relationship that resulted from Hamidiy's solicitation. And Hamidiy has not "present[ed] a compelling case" that the fair play and substantial justice factors[13] make this one of the rare cases where an otherwise valid exercise of personal jurisdiction is constitutionally unfair.[14] The Court has personal jurisdiction over Hamidiy.

---

[9] *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221–22 (10th Cir. 2021).

[10] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[11] *Id.*

[12] *Id.*

[13] *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020) (listing the five factors).

[14] *Hood*, 21 F.4th at 1227 (quoting *Burger King*, 471 U.S. at 477).

**II. Subject Matter Jurisdiction**

Gatewood's primary cause of action arises under a federal statute, 42 U.S.C. § 1981. This Court has subject matter jurisdiction over such a federal question.[15] In addition, this Court exercises supplemental jurisdiction over Gatewood's additional, related cause of action under Oklahoma state law.[16]

**III. Adequacy of Claims**

The facts alleged in Gatewood's Complaint (Dkt. 1) sufficiently allege both his § 1981 and his state law claims.

*A. Section 1981 Claim*

42 U.S.C. § 1981 guarantees that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."[17] "[T]he term 'make and enforce contracts' includes . . . termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[18] A plaintiff demonstrates a § 1981 discrimination claim by showing: "(1) membership in a protected class; (2) the defendant intended to discriminate on the basis of race; and (3) the alleged discrimination interfered with a protected activity as defined in the statute (that is, making or enforcing a contract)."[19]

---

[15] 28 U.S.C. § 1331.

[16] 28 U.S.C. § 1367.

[17] 42 U.S.C. § 1981(a).

[18] 42 U.S.C. § 1981(b).

[19] *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022).

Here, all three elements are sufficiently pled. First, as an African American, Gatewood is a member of a protected class. Second, there are sufficient facts in the Complaint to establish that Hamidiy, through its president, intended to discriminate on the basis of race. This is so because "the context and timing" of the president's racially derogatory statements were "closely linked with the adverse decision" to terminate Gatewood's employment.[20] Indeed, the overlap between the discriminatory comments and the termination decision is essentially 1:1. And third, Hamidiy's discrimination interfered with Gatewood's enforcement of his employment contract by depriving him of wages owed and resulting in the termination of his contract. Gatewood has adequately pleaded his § 1981 claim.

*B. State Law Claim*

To establish an unpaid wages claim under Oklahoma law, an employee must establish: "1) an employer-employee relationship; 2) wages are earned and due or provided in an established policy; 3) employment was terminated; and 4) the employer failed to pay the employee's wages at the next regular pay day after termination."[21] These elements are straightforward, and clearly alleged in the Complaint (Dkt. 1). Gatewood has adequately pleaded his Oklahoma state law claim.

---

[20] *Id.* at 1216.

[21] *Coen v. SemGroup Energy Partners G.P., LLC*, 310 P.3d 657, 662 (Okla. Civ. App. 2013); Okla. Stat. tit. 40, § 165.3

**IV. Damages**

Having determined that Gatewood sufficiently pleaded the claims subject to default, the Court must now determine the appropriate damages owed to him. As already discussed above, the Court must consider the evidence presented at the Motion Hearing to determine if "the amount requested is reasonable under the circumstances"[22] and established "to a reasonable degree of certainty."[23] In addition, damages awarded in a default judgment "must not differ in kind from, or exceed in amount," what is demanded in the Complaint.[24] The Complaint requests damages in the form of "lost earnings, past, present, and future, for the unpaid and due compensation together with liquidated damages, costs, interest and attorney's fees, along with punitive damages."[25]

---

[22] *Mathiason*, 187 F. Supp. 3d at 1274.

[23] *Larson*, 242 F.3d at 819.

[24] Fed. R. Civ. P. 54(c). Where a complaint does not allege a sum certain for different kinds of damages, the logic of the rule serves to limit recovery to the kinds and amounts of damages that the pleading provides meaningful notice of. *See Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813–14 (5th Cir. 2018) (citing 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2663 (4th ed. 2014)).

[25] Pl.'s Compl. (Dkt. 1), at 3. While the Complaint does allege that Gatewood suffered injury in the form of emotional distress, that category of damages is not included in the prayer for relief. Pl.'s Compl. (Dkt. 1), at 2–3. Prior to 2007, Rule 54(c) expressly confined default judgments to the kinds and amount of damages "prayed for in the demand for judgment." *See Ditech Fin.*, 742 F. App'x at 812 n.3. The 2007 amendment modified this language to "demanded in the pleadings." *Id.* The Tenth Circuit has not addressed whether the amendment worked a substantive change in what courts may consider when awarding default judgment. Some courts have read the amendment to broaden the scope of considerations. *Id.* Others have not. *Id.* The advisory committee's notes suggest that the change was meant to be stylistic only. *Id.* In the absence of guidance directing a change, the Court finds that Rule 54(c) retains its prior meaning, and Gatewood's damages are limited to those forms included in the prayer for relief.

*A. Compensatory Damages*

Gatewood's requests for past unpaid compensation arise most directly under his state law claim, although § 1981 would also permit recovery.[26] Oklahoma's Protection of Labor Act authorizes relief in the form of unpaid accrued compensation and liquidated damages.[27] An employer is subject to liquidated damages "if the employer willfully withheld wages over which there was no bona fide disagreement."[28] The amount of liquidated damages is then either "two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned" or "an amount equal to the unpaid wages, whichever is smaller."[29]

In his Complaint, Gatewood put the amount of unpaid wages at "approximately $12,000." At the Motion Hearing, Gatewood walked through his employment arrangements with Hamidiy, including his own dedicated delivery run and wages, and his responsibilities to pay the wages of the drivers working under him in the event of a paycheck discrepancy. All told, Gatewood established to a reasonable degree of certainty through his testimonial evidence $17,100 in compensatory damages for past unpaid wages. The Court finds that this amount is reasonably contemplated by the approximation in the Complaint, and therefore awards Gatewood $17,100 for the unpaid wages. Because there

---

[26] *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). Of course, Gatewood may not recover twice for the same harm.

[27] Okla. Stat. tit. 40, § 165.1–11.

[28] § 165.3(B).

[29] *Id.; see Guerrero v. Horn*, 837 P.2d 935, 936 (Okla. Civ. App. 1992).

8

was no bona fide disagreement that Gatewood was owed these wages, Hamidiy is additionally liable for liquidated damages equal to the unpaid wages.[30] The Court therefore awards Gatewood an additional $17,100 in liquidated damages. The Oklahoma Protection of Labor Act does not specifically authorize prejudgment interest, and Oklahoma's general prejudgment interest provision only permits recovery of prejudgment interest beginning twenty-four months after a suit is filed.[31] Accordingly, Gatewood is not entitled to prejudgment interest on these or his other claimed damages.

Gatewood's request for past, present, and future lost earnings implicate the doctrines of back pay and front pay, equitable remedies available in § 1981 discrimination cases.[32] "Backpay starts at the time of deprivation and ends when the evidence is submitted to the factfinder . . . ."[33] Back pay covers lost wages, reduced by the amount earned from other employment.[34] Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."[35] In a case like this one,

---

[30] At the time of the Motion Hearing, the unpaid wages had been due for approximately 325 days. 17,100*.02*325 = 111,150. Liquidated damages are therefore equal to the smaller value, $17,100, the amount of unpaid wages.

[31] Okla. Stat. tit. 12, § 727.1(E).

[32] *See Johnson*, 421 U.S. at 459–60.

[33] *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1040–42 (10th Cir. 2021).

[34] *See Wulf v. City of Wichita*, 883 F.2d 842, 870–71 (10th Cir. 1989)

[35] *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). Because the Court must "strive to provide make-whole relief," front pay will be awarded from the time backpay ceased to account for the gap between the Motion Hearing and the entry of judgment. *Tudor*, 13 F.4th at 1041.

where reinstatement is not an option, the Court must consider several factors in assessing an award of front pay, including:

> "(1) work life expectancy, (2) salary and benefits at the time of termination, (3) any potential increase in salary through regular promotions and cost of living adjustment, (4) the reasonable availability of other work opportunities, (5) the period within which the plaintiff may become re-employed with reasonable efforts, and (6) methods to discount any award to net present value."[36]

At the Motion Hearing, Gatewood introduced into evidence his 1099 form for the five full months he worked for Hamidiy in 2022.[37] That form shows earnings of $92,379.40, for a monthly wage of approximately $18,475. Gatewood further testified that this wage reflected his "dedicated run": the routine, interstate delivery route he drove for Hamidiy every week. He also testified that he had no other source of income at the time he worked for Hamidiy. At the time of the Motion Hearing, Gatewood had been unable to find comparable employment, and was instead driving a garbage truck and shoeing horses for a total monthly income of approximately $1,500.

Gatewood testified that, had he not been terminated, he would have planned to work for Hamidiy for another ten years before retiring. While Gatewood discussed training additional drivers in the future, he did not estimate future increases in his earnings. Nor did he specifically testify about future prospects of obtaining comparable employment, or methods to discount an award to net present value.

---

[36] *Tudor*, 13 F.4th at 1041 (quoting *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1146 (10th Cir. 2006)).

[37] Ex. 1 (Dkt. 16).

In accordance with the above evidence, the Court calculates the following compensatory awards for lost earnings. Gatewood is entitled to eleven months of back pay, covering the period from his termination at the beginning of June 2022, to the Motion Hearing at the end of April 2023. Back pay is owed in the amount of $16,975 per month, that being the difference in Gatewood's monthly income before and after his termination. This results in a total back pay award of $186,725. Front pay awards necessarily include an aspect of intelligent guesswork.[38] Here, where the employment contract was at will, and Plaintiff has failed to provide evidence on several of the front pay factors, the Court finds that a full award of ten years of front pay is not justified. Given all of the evidence available, the Court finds that an award of two years of front pay, at the rate determined above, has been established to a reasonable degree of certainty. This results in a total front pay award of $407,400. Total compensatory damages therefore amount to $628,325. Given Gatewood's income at the time he was terminated, the Court finds that this award amount is reasonably contemplated by the Complaint.

*B. Punitive Damages*

Punitive damages are available under § 1981 in certain circumstances,[39] and there is no statutory cap limiting punitive damages under § 1981.[40] "In the Tenth Circuit, the standard for punitive damages for discrimination in violation of federal civil rights is that the discrimination must have been 'malicious, willful, and in gross disregard of [plaintiff's]

---

[38] *See Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir. 1986).
[39] *Johnson*, 421 U.S. at 460.
[40] *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1117 (10th Cir. 2001)

rights.'"[41] Punitive damages can be awarded against an employer under the doctrine of respondeat superior.[42] In determining the amount of a punitive damage award, courts must consider three factors: (1) the reprehensibility of the defendant's conduct; (2) the ratio of the punitive damage award to the compensatory damage award; and (3) the measure of the punitive damage award in relation to awards for comparable misconduct.[43] Deterrence and the size and wealth of the defendant are also relevant considerations.[44]

Here, in addition to the fact that Hamidiy has defaulted, the standard for punitive damages is clearly met. Hamidiy's president's termination of Gatewood was part of a reprehensible, dehumanizing, racist screed.[45] Unquestionably, this act was a willful and malicious violation of, or at the very least reckless disregard for, Gatewood's federally

---

[41] *Id.* at 1115 (quoting *Jackson v. Pool Mortgage Co.*, 868 F.2d 1178, 1181 (10th Cir. 1989)).

[42] *James v. Heuberger Motors, Inc.*, No. 10-CV-01648-CMA-KLM, 2011 WL 334473, at *3 (D. Colo. Jan. 28, 2011) (quoting *Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 410–11 (D. Nev. 1995)).

[43] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1272 (10th Cir. 2000).

[44] *Id.*

[45] As related by Gatewood at the Motion Hearing:

> "I then picked the phone up. This man [Russ, President of Hamidiy] went on to tell me how, before he got into trucking, he was in the mafia, he's killed many niggers before. Where he come from, he'd feed his dog before he would feed a nigger. 'We call you the N word over there. We have no respect for you.' Then, I get tired of listening at it, and I hang it up, and I get a text message. 'You're nothing but a big pussy. You're a nigger, shut the fuck up, come to Florida, I'll kick your ass. As a matter of fact, get out of my truck, you're terminated. Leave it right there or I'm going to send some of my guys to come and get you. I see you're in Illinois right now."

In a call earlier that night, Gatewood recounts that Russ stated "I'm sick of you niggers. I'm sick of y'all coming to my company. I don't know why I hire y'all."

protected right to be free from racial discrimination. The fact of the termination shows that Russ was acting in his role as president of Hamidiy and on behalf of Hamidiy. Accordingly, the Court finds that punitive damages are appropriate here. Next, we must determine what amount of damages are reasonably necessary to punish and deter.[46]

1. Reprehensibility

The degree of reprehensibility is "[p]erhaps the most important indicium" in determining a reasonable punitive damages award.[47] Courts consider five factors in gauging reprehensibility:

> "(1) whether the harm caused was physical as opposed to economic; (2) whether the defendant acted with indifference or a reckless disregard for the health or safety of others; (3) the financial vulnerability of the plaintiff; (4) whether the defendant's wrongful conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident."[48]

An intentional act satisfying the fifth factor may be indicative of "particularly reprehensible conduct."[49]

Here the harm caused was primarily economic.[50] There was no evidence in record to support a finding under the second factor. Gatewood testified to his vulnerabilities as an individual owner/operator with outstanding payments on his vehicles and dependents to

---

[46] *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991).

[47] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

[48] *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207 (10th Cir. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

[49] *Gore*, 517 U.S. at 576.

[50] While Russ' conduct certainly caused non-economic harms, the Complaint did not seek emotional distress damages.

support. Although the discriminatory tirade and resulting termination took the form of two phone calls and a series of text messages, it was still in essence an isolated incident. And as already discussed, Gatewood's harm was the result of intentional malice. In sum, factors one, two, and four provide little or no support for a high degree of reprehensibility, while factor three provides some support. Factor five, and the intentionally malicious conduct of Hamidiy, lean in favor of a high degree of reprehensibility.

    2. Ratio

Due process creates a limit on punitive damage awards, and the Supreme Court has stated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process."[51] Where compensatory damages are substantial, a lower ratio is usually appropriate.[52] While there is no fixed metric of what qualifies compensatory damages as "substantial," $1,000,000 is a common benchmark.[53] Here, Gatewood's compensatory damage award totals $628,325, which is not insignificant, though it is below the "substantial" benchmark.

    3. Comparison

Although the facts and circumstances of each case are different, the Court looks to other § 1981 punitive damage awards for guidance as to the reasonable range of punishments an employer is fairly on notice for. In *Bains LLC v. Arco Products Co.*,[54] a

---

[51] *State Farm*, 538 U.S. at 425.

[52] *Id.*

[53] *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1067–70 (10th Cir. 2016).

[54] 405 F.3d 764 (9th Cir. 2005).

case involving not just termination, but an ongoing pattern of racial discrimination by the employer, the Ninth Circuit modified the jury verdict to reach a ratio of 9:1.[55] In *Morris v. BNSF Railway Company*,[56] a case centered around a racially motivated termination decision, the Northern District of Illinois approved a 1.35:1 ratio.[57] In *Williams v. ConAgra Poultry Co.*,[58] the Eighth Circuit held that, where an employee victimized by racial discrimination received $600,000 in compensatory damages, a 1:1 ratio was appropriate.[59] Other recent cases with similar facts have settled on a ratio of 3:1.[60]

4. Financial Condition

A defendant's financial condition is relevant to sizing a punitive damages award to promote deterrence. That is to say, a punitive damage award "is supposed to sting."[61] However, "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award," and "cannot make up for the failure of other factors, such as

---

[55] *Id.* at 774–77; *see also Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 841–45 (N.D. Cal. 2022) (similarly reaching a 9:1 ratio in a case involving an ongoing pattern of intentional racial discrimination).

[56] 429 F. Supp. 3d 545 (N.D. Ill. 2019)

[57] *Id.* at 560–61.

[58] 378 F.3d 790 (8th Cir. 2004).

[59] *Id.* at 796–99.

[60] *See Claud v. Brown Harris Stevens of Hamptons, LLC*, No. 18-CV-01390-NRM-ST, 2023 WL 3858677, at *32–33 (E.D.N.Y. June 7, 2023); *Gray v. Imperial Pac. Int'l (CNMI), LLC*, No. 19-CV-00008, 2023 WL 3714156, at *18–20 (D.N. Mar. I. May 30, 2023).

[61] *Bains LLC*, 405 F.3d at 777.

'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct."[62]

Because this is a default judgment, there has been no discovery to flesh out Hamidiy's financial condition. The only evidence in record is Gatewood's testimony based on his personal observations. At the Motion Hearing, Gatewood described to the Court his experience visiting several Hamidiy bases of operation in Florida and Chicago. He described the Hamidiy fleet consisting of at least 60 to 90 commercial trucks with over 100 drivers on hire and mentioned that Hamidiy was one of Amazon's top shippers. After this discussion, Gatewood offered his opinion that a punitive damages award of at least $1,000,000 would appropriately punish and deter Hamidiy's conduct.

5. Final Determination

Having considered the relevant factors and the facts of this case, the Court finds that a punitive damage award of $1,000,000 is justified. This represents a ratio of just over 1.5. This value is warranted given the egregious, intentional conduct on the part of Hamidiy. That conduct was an isolated incident, distinguishing it from similar cases where ratios on the order of 3:1 or higher were imposed, but nonetheless significantly reprehensible.[63]

---

[62] *State Farm*, 427–28 (internal quotations omitted).

[63] *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1043–44 (9th Cir. 2003) (noting the "importance of our society's interest in combating discrimination" and that "[r]acial discrimination often results in large punitive damage awards").

*C. Attorney Fees*

Both § 1981 and the Oklahoma Protection of Labor Act permit recovery of costs and attorney's fees.[64] At the damages hearing, counsel for Plaintiff confirmed that he will be filing an application for costs and fees following the Judgment.

### *Conclusion*

In accordance with the above determinations, the Court finds that Gatewood is entitled to $628,325 in compensatory damages, $1,000,000 in punitive damages, and reasonable costs and attorney's fees. A separate Judgment will be entered reflecting this finding.

**IT IS SO ORDERED** this 5th day of October 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[64] 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[] 1981 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"); Okla. Stat. tit. 40, § 165.9(B)